**BRAMBLE TRANSPORTATION, INC., a corporation incorporated under the laws of the State of Delaware, Plaintiff,**

v.

**SAM SENTER SALES, INC., a corporation incorporated under the laws of a State other than the State of Delaware, and Walter E. Heller & Company of Florida, a corporation of the State of Delaware, Defendants.**

Superior Court of Delaware, Sussex.

July 13, 1971.

---

John J. Schmittinger, of Schmittinger & Rodriguez, Dover, for plaintiff.

N. Maxson Terry, Jr., of Terry & Terry, Dover, for Walter E. Heller & Co., defendant.

## OPINION

QUILLEN, Judge:

This opinion concerns a motion to intervene in the case of Bramble Transportation, Inc. v. Sam Senter Sales, Inc. filed by Walter E. Heller & Company, a Florida corporation, pursuant to Superior Court Rules, Civil Rule 24, Del.C.Ann.

The facts before the Court are as follows: On May 12, 1970, Bramble Transportation, Inc., a Delaware corporation, filed a complaint in this Court claiming that Sam Senter Sales, Inc., a Florida corporation, owed plaintiff $10,825.20 for freight charges. Accompanying the complaint was a petition for issuance of a Writ of Foreign Attachment against a debt owing to defendant by Draper-King Cole, Inc., a Delaware corporation with its principal place of business in Milton, Delaware. Acting in reliance upon an affidavit of Sybil Bundik, president of the plaintiff corporation, stating in part that to the best of affiant's knowledge defendant's interest or title in the account receivable constituted full and complete equitable ownership, this Court on May 12, 1970, ordered that the property in question be attached pursuant to 10 Del.C. §§ 3507, 3508, as amended 52 Del.Laws Ch. 341 (1960). The sum deposited with this Court by Draper-King Cole pursuant to the attachment was $7,053.25, representing the total amount owed by Draper-King Cole to Sam Senter Sales, Inc.

On June 2, 1970, Walter E. Heller & Company filed the present motion to intervene, stating as grounds for such intervention that Heller had an assignment of the accounts owed by Draper-King Cole to Sam Senter Sales and that Heller was therefore legal and beneficial owner of the debt attached by this Court on May 12. In support of that motion, Heller has filed numerous documents with this Court, including copies of three sets of assignment agreements, all dated prior to May 12, 1970, by which Sam Senter Sales, Inc. assigned accounts receivable from Draper-King Cole to Sam Senter Farms, Inc., another Florida Corporation, which in turn assigned them to Heller. It is through this chain that Heller claims its perfected interest in the attached debt and asks that should its motion to intervene be granted, that the Writ of Foreign Attachment be quashed and that the fund held by this Court be turned over to Heller as its legal owner.

On June 25, 1970, plaintiff Bramble Transportation, Inc., upon failure of Sam Senter Sales, Inc. to make an appearance within the time permitted by statute, petitioned for entry of a default judgment against the defendant. That petition has not been acted upon, the entry of the de-

fault judgment awaiting the disposition of the present motion to intervene.

 This Court turns first to the question of whether petitioner may properly intervene in this case under Superior Court Rule 24. Rule 24(a) states:

"(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when an applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." ·

Inasmuch as Sam Senter Sales, Inc. failed to appear in the underlying suit, there is no question that Heller's interest is not adequately represented by existing parties. It is also clear that Heller has claimed an interest relating to the attached property which, if valid, may as a practical matter impair his ability to protect that interest, forcing Heller to incur the expense and delay of additional litigation in a suit against Bramble on the underlying claim. Whether the particular facts of a case require the application of a party's right to intervene is a matter in the discretion of the Court and the exercise of such discretion in cases concerning the validity of an attachment has precedent in this Court. Bankers Mortgage Co. v. Sohland, 3 W.W. Harr. 331, 138 A. 361 (Super.Ct.1927). Therefore, Heller's motion to intervene is granted and, as discussed at oral argument, this Court will proceed to consider intervener's motion to vacate and quash the Writ of Foreign Attachment for insufficiency of process pursuant to Superior Court Rules, Civil Rule 12(b) (4).

 An attachment creditor reaches only the interest which a debtor had at the time of attachment, and therefore an as-signment by the debtor before the order of attachment takes priority over it if the transfer be in fact valid and operative. 7 C.J.S. Attachment § 273, p. 455. Wilmington Morris Plan Bank v. Longacre, 7 W.W.Harr. 101, 180 A. 642 (Super.Ct. 1935). It follows that a Writ of Foreign Attachment cannot be properly levied in a case where a defendant corporation has no attachable interest in the subject of the attachment as of the date of attachment. Stasch v. Underwater Works, Inc., 2 Storey 397, 158 A.2d 809 (Super.Ct. 1950). If, therefore, Heller holds valid assignments to the accounts receivable from Draper-King Cole, the Writ of Foreign Attachment must be quashed, the date of execution of the assignments in question (April 24, April 28, and May 5, 1970) all being prior to the date of attachment, May 12, 1970.

 In order to determine the validity of the assignments of the accounts receivable in question, it is necessary to refer to the secured transaction provisions of the Uniform Commercial Code, enacted into Delaware law as 5A Del.C. § 9–101 through 9–507. An analysis of these provisions indicates that Bramble's contention that the UCC is not applicable in this case is clearly without merit. The Code defines "account" as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." 5A Del.C. § 9–106. *See also* Matthews v. Arctic Tire, Inc., 262 A.2d 831, 833 ·(R.I.1970) including accounts receivable in this definition. The scope of Article 9 is defined as follows:

(1) Except as otherwise provided in Section 9–103 on multiple state transactions and in Section 9–104 on excluded transactions, this Article applies so far as concerns any personal property and fixtures within the jurisdiction of this state

(a) to any transaction (regardless of its form) which is intended to create

a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also

(b) to any sale of accounts, contract rights or chattel paper. 5A Del.C. § 9–102(1)

The Delaware Study Comment to Section 9–102 adds the following interpretation:

Article 9 applies:

(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures within the jurisdiction of the enacting state. Goods, documents, instruments, general intangibles, chattel paper, *accounts* and contract rights as defined in subsequent sections of the UCC are included within the types of property to which Article 9 applies. [Emphasis added]

(b) To outright sales or transfers of *accounts receivable*, contract rights or chattel paper. These terms are also defined in subsequent sections of the UCC. There inclusion within the coverage of Article 9 eliminates troublesome uncertainties regarding the manner of giving notice to the general public of transfer of ownership of these three types of property interests. It also fully recognizes the commercial practice, frequently followed by manufacturers, merchandisers, and other businessmen of deriving working capital from such assets in order to finance various phases of their business. [Emphasis added]

■ Sam Senter Sales' assignments to Sam Senter Farms and Farms' assignments to Heller fall within the scope of the UCC as outlined above. Furthermore, the accounts in question are not excluded under the provisions of Section 9–104(f) as contended by Bramble. The portion of that section relied upon by Bramble states that Article 9 does not apply to " . . . an assignment of accounts . . . which is for the purpose of collection only . . . ." 5A Del.C. § 9–104(f). As correctly pointed out by Heller, this exclusion is for the purpose of removing from the Code assignments of a non-commercial nature such as those to a collection agency for the sole purpose of facilitating collection of the debt. It does not purport to exclude transactions generally considered "financing in nature". *See* Delaware Study Comment, 5A Del.C. § 9–104(f), Study Comment p. 492.

Having determined that the UCC applies to the case at hand, the Court now turns to the choice of law question. UCC Section 9–103 states:

(1) If the office where the assignor of accounts or contract rights keeps his records concerning them is in this state, the validity and perfection of a security interest therein and the possibility and effect of proper filing is governed by this Article; otherwise by the law (including the conflict of laws rules) of the jurisdiction where such office is located. 5A Del.C. § 9–103(1)

■ This provision dictates that Florida law applies in the present case to determine the validity of the assignments in question, inasmuch as the offices of the assignors, Sam Senter Farms and Sam Senter Sales, are located in Florida.

The Florida legislature adopted the UCC effective January 1, 1967. Inasmuch as the Florida choice of laws provision under F.S.A. § 679.9–103 is the same as that found in the Delaware version of the Code, the Court now turns to Florida law to determine the validity of Sam Senter Sales' assignments to Heller.

■ Under the Uniform Commercial Code, a security interest in an account receivable is perfected when it has attached and when a financing statement has been filed. If filing occurs before the security interest attaches, it is perfected at the time when it attaches. F.S.A. § 679.9–103 and

F.S.A. § 679.9–302; *accord,* In re Platt, 257 F.Supp. 478 (E.D.Pa.1966).

Heller, in support of his contention that he holds a perfected security interest in the Draper-King Cole accounts receivable, has submitted the following documents to the Court:

1. Financing statements (Form UCC–1) covering present and future accounts from *Sales* (debtor) to *Heller* (secured party) and from *Farms* (debtor) to *Heller* (secured party) dated November 1, 1966 and recorded in the office of the Clerk of the Circuit Court, Palm Beach County, Florida.

2. Financing statements (Form UCC–1) covering present and future accounts from *Farms* to *Heller, Sales* to *Farms,* and *Sales* to *Heller* recorded in the office of the Florida Secretary of State.

3. Specific written assignments of the three Draper-King Cole accounts totaling $7,053.25 from *Sales* to *Farms* (signed by both parties) and from *Farms* to *Heller* (signed by both parties) dated April 24, April 28 and May 5, 1970, respectively.

■ In order to determine the legal effect of these documents, it is necessary to distinguish between the concept of security "attachment" and the concept of security "perfection" under the Uniform Commercial Code. Attachment deals with those steps legally required to give the secured party an interest in the subject property effective against the debtor. Perfection deals with those steps legally required to give the secured party an interest in the subject property against the debtor's creditors. In re Certified Packaging, Inc., 8 UCCRS 95 (D Utah, 1970). Furthermore, as noted above, attachment is a prerequisite to perfection.

The following statutory criteria govern the attachment of a security interest:

"A security interest cannot attach until there is agreement . . . that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching." F.S.A. § 679.9–204(1).

■ In addition F.S.A. § 679.9–203 (1) (b) adds a statute of frauds requirements that the security agreement be in writing and signed by the debtor. In the present case, the security agreements from Sales to Farms and the subsequent agreements from Farms to Heller were each in writing, signed by the debtor, value in the form of an advance was given, and the debtor had rights in the account at the time it was sold. Therefore, this Court concludes that the security interest properly attached in each case. Keeping in mind the distinction between attachment and perfection, however, it does not necessarily follow that Heller is protected against the claims of Sales' and Farms' creditors. The proper place designated by Florida law in which to file a financing statement required to perfect a security interest in accounts receivable is in the office of the clerk of the circuit court in the county of the debtor's residence. F.S.A. § 679.9–401. Therefore, since the present case deals specifically with accounts, this Court may consider only the effect of the financing statements from Sales to Heller and from Farms to Heller on file with the circuit court of Palm Beach County. The documents on file with the Secretary of State, which include an additional financing statement from Sales to Farms, cannot be properly considered. The fact that there is no financing statement properly filed between Sales and Farms with the clerk of the circuit court adds an element of difficulty to this case.

The UCC deals specifically with the assignment of perfected security interests, stating that no further filing is required in order to continue the perfected status of the security interest against creditors of the original debtor. *See* F.S.A. § 679.9–302(2). That provision contains no requirement of privity between the original debtor and the

subsequent assignee. In the present case, however, Farms' security interest in Sales' accounts receivable was not perfected due to the fact that the financing statement between those parties was not filed in the proper location. The UCC does not directly address the problem present here of whether a financing statement signed by the original debtor and the assignee of the original secured party may function to perfect a series of properly attached security agreements which in fact places the parties in the position of debtor and secured party. Inasmuch as judicial research has disclosed no cases on point, the Court must turn to an examination of the intent of the Code's filing provisions to determine if the Code provides a satisfactory indirect answer to this question.

 The UCC system of notice filing, in effect in Florida, requires that only a financing statement need be recorded in order to perfect an otherwise valid security interest. It is not necessary to file the underlying security agreement itself. Industrial Packaging Prod. Co. v. Fort Pitt Pack. Inc., 399 Pa. 643, 161 A.2d 19 (1960).

The Code defines a sufficient financing statement as follows:

A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral . . . F.S.A. § 679.9–402

The Florida Study Comment concerning this section adds the following background concerning "notice" filing:

"This section, based on former section 673.13, F.S.A., established the 'notice'

system rather than the 'document' filing system, and abolishes the necessity of an acknowledgment for recording.

Under the 'notice' filing system the records are intended to give notice that a security agreement between the parties exists or may come into existence. The inquiring party may then resort to the parties themselves to ascertain in detail the financial relationship between the debtor and the secured party." F.S.A. § 679.9–402, Study Comment p. 349.[1]

 The UCC shall be liberally construed and applied to promote its underlying purposes and policies. F.S.A. § 671.1–102. The key to perfection under Article 9 is notice. In re Osburn, 6 UCCRS 427 (N.D.Mich.1967). The purpose of a financing statement is to put a searcher on notice that an underlying security agreement may be outstanding. A properly filed financing statement would thus serve its intended purpose if a subsequent party would have been put on notice of an outstanding security agreement. Mid-Eastern Electronics, Inc. v. First National Bank of Southern Maryland, 7 UCCRS 1089 (4th Cir. 1970). In the present case, had plaintiff searched the Florida records he would have discovered the financing statement from Sales to Heller, containing a statement of the type of collateral involved and the signatures and addresses of both parties to the statement. Plaintiff then had a duty to inquire of Heller exactly what property, if any, was held under the statement. Plemens v. Didde-Glaser, Inc., 244 Md. 556, 224 A.2d 464, 468 (1966); accord, In re Platt, 257 F.Supp. 478 (E.D.Pa.1966). There is no indication in the record that such an inquiry was ever made. Were it made, it would have disclosed that Heller had an assignment of the accounts receivable from Draper-King Cole. It thus ap-

---

1. See Comment 2, A. L. I. and N. C. C. U. S. L., 1962 Official Text and Comments addition Uniform Commercial Code, p. 624, defining an assignee of a security interest as a secured party.

pears that the financing statement from Sales to Heller fulfilled the notice function envisaged by the drafters of the Code. In a sense, the notice provided here is better than the original debtor-original creditor financing statement because the middle man has been eliminated in both the notice given and in fact. Furthermore, the course of dealing between Sales, Farms and Heller indicates that the chain of security agreements among the parties was clearly intended to create an arrangement by which Sales would in fact be the debtor and Heller would be the secured party. To interpret Section 9–402 of the Code in such a way as to exclude either Sales or Heller from the relationship of debtor and secured party in this case would be counter to the stated purpose of the UCC to permit the continued expansion of commercial practices through custom, usage and agreement of the parties. *See* F.S.A. § 671.1–102(2) (b). Therefore, having concluded that Sales' creditors were properly protected by the notice provisions of the Code through the Sales-Heller financing statement and having taken notice of the fact that the chain of agreements constituted an agreement in fact between Sales, Farms and Heller that a security interest attach to the Draper-King Cole accounts, this Court finds that Heller holds a perfected security interest in the accounts in question.

The Writ of Foreign Attachment was issued in reliance upon the affidavit of Bramble's president that the debt attached was the property of Sam Senter Sales, Inc. Inasmuch as it has now been determined that the right to these accounts is properly vested in the intervener, the Writ of Foreign Attachment should be quashed with directions to the Prothonotary to release the funds on account to the intervener, Walter P. Heller & Company. An order should be presented, on notice, within ten days.