IN THE MATTER OF THE GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS OF MAPLE CONTRACTORS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, ASSIGNOR, TO MYRON S. LEHMAN, ASSIGNEE.

Superior Court of New Jersey
Law Division—Probate Part
Essex County

Decided December 14, 1979.

*Hal L. Baume* for assignee (*Lehman & Wasserman*, attorneys).

*Roger P. Sauer* and *Gary O. Aidekman* for United Pacific Insurance Company (*Lum, Biunno & Tompkins*, attorneys).

VILLANUEVA, J. S. C.

This case involves a novel question wherein a creditor claims a lien on personal property by virtue of the filing of a financing statement unsigned by the debtor, to which there was affixed a purported security agreement between the debtor and an entity different than the creditor. There is no reported case upholding as a lien a financing statement unsigned by the debtor to which no valid security agreement or lease is attached.

Maple Contractors, Inc. (hereinafter "Maple"), is a New Jersey corporation incorporated prior to 1973. On November 2, 1979 it made an assignment for the benefit of creditors to Myron

S. Lehman, assignee. At that time the corporation was the owner of certain personal property, consisting of miscellaneous office equipment, certain construction equipment and seven motor vehicles. A notice of public sale of the personal property, to be held November 16, 1979, was duly mailed and advertised.

On November 14 and 16, 1979 the attorneys for United Pacific Insurance Company (hereinafter "United Pacific") made application to this court to restrain the sale of all personal property upon the ground that United Pacific was a secured creditor and therefore entitled to all of the property. The court on November 16 determined that since the seven motor vehicles had no encumbrances shown on their title certificates, United Pacific did not have a valid lien on the vehicles. Therefore, the court permitted the sale of the seven motor vehicles to take place, the same being confirmed by the court. *N.J.S.A* 39:10 11 and *N.J.S.A.* 12A:9 -302. At that time the court denied the application to restrain the sale but ruled that the confirmation of the sale of all other personal property would not take place unless and until the court determined that United Pacific had no valid lien on such property.

At that time the only evidence given the court was a certification of an attorney, who was also an employee of United Pacific, who stated that Reliance Insurance Company (hereinafter "Reliance") was at all relevant time periods herein, and still is, the parent company of United Pacific. He stated that

.  .  .  .  .  .  .  .

3. On or about December 10, 1975, Maple Contractors, Inc. (hereinafter "Maple"), entered into four separate written agreements with the Borough of Point Pleasant for the construction of a sanitary sewerage system for that municipality. These contracts were designated Contracts PP- 6A -6D, inclusive. Pursuant to specifications made part of the Contract by the municipality, Maple obtained from United Pacific four performance bonds in respect of these Contracts.

4. On or about April 6, 1979, the Borough of Point Pleasant declared Maple to be in default on these Contracts, terminated its participation and called upon United Pacific to honor its obligations under the bonds in question. United Pacific responded to the municipality's overtures, and after a series of lengthy meetings, a formal take-over agreement was entered into whereby United Pacific, *inter alia*, agreed to undertake the task of completion of these projects. * * * As of the present, United Pacific has sustained loss in the approximate amount of $1,300,000.00 on account of Maple, and it is presently projected that United Pacific's ultimate loss will amount to approximately $1,600,000.00.

There was no reference in said certification to any security agreement between United Pacific and Maple.

On August 13, 1976 Reliance and Maple entered into a continuing agreement of indemnity by which Maple purported to assign and transfer, as collateral security for the full performance of the continuing agreement, all the right, title and interest of Maple in and to all its equipment on the day of execution of any such bond or bonds. The agreement stated that it "shall constitute a Security Agreement to Surety and also a Financing Statement."

The foregoing indemnity agreement between Maple and Reliance was attached to the form UCC 1 Financing Statement (and referred to in the financing statement) listing Maple as the debtor and United Pacific as the creditor, and it was then filed with the Secretary of State of New Jersey on May 22, 1979. The financing statement was signed by United Pacific (not a party to the filed indemnity agreement), but it was not signed by the debtor. A U.C.C. search indicates that this financing statement was the only one of record against Maple as of October 1, 1979, and at the time of the assignment for benefit of creditors.

At the plenary hearing held on November 30, 1979 neither party offered any testimony, but United Pacific for the first time submitted a Continuing Agreement of Indemnity-Contractor's Form, executed between United Pacific and Maple, dated August 27, 1973. This agreement is identical in its printed language to the subsequent agreement between Maple and

Reliance dated August 13, 1976. There is no evidence before the court that at the time of the execution of either agreement any money was due by the debtor to the insurance company with whom Maple entered into the agreement.

In this matter it is the burden of United Pacific to establish the existence of its lien and the amount thereof. The court is satisfied from the certification submitted by United Pacific that the amount of the claim of United Pacific far exceeds the value of the collateral. The issue in the case, however, is whether or not a valid lien was ever perfected on any of the collateral. United Pacific contends that it has a valid security interest by virtue of its filing of a financing statement to which there was attached an indemnity agreement executed between Maple and Reliance, purporting to create a valid security interest.

The basic requirements for the creation of a valid security interest are (1) a security agreement must be entered into; (2) the agreement must be in writing or the creditor must be in possession of collateral; (3) the debtor must have rights in collateral and (4) the secured party must have given value. *Doyle v. Northrop Corp.*, 455 *F.Supp.* 1318, 1331 (D.N.J.1978); *N.J.S.A.* 12A:9-203, 204; *Girard Trust Corn Exch. Bank v. Lepley Ford, Inc.*, 13 *Pa.D.&C.*2d 119 (1957); 4 *Anderson's Uniform Commercial Code* (2 ed.), p. 154.

In order to be enforceable the security agreement must be signed by the debtor. *N.J.S.A.* 12A:9 203. There is no dispute that United Pacific gave value to Maple (whether it be when the agreement was signed between Maple and United Pacific in 1973, or in December 1975 when Maple entered into separate agreements with the Borough of Point Pleasant which were guaranteed by United Pacific), and that United Pacific has a claim against Maple which has been reduced to judgment.

It is also undisputed that there was never any claim by Reliance against Maple. Therefore, the purported continuing

indemnity agreement, between Maple and Reliance, which was attached to the financing statement, has no validity since no value was ever given by the secured party. Even if there were a debt due and owing by Maple to Reliance, there would still not be an enforceable security interest because Reliance failed to perfect such an interest by properly filing a financing statement. *N.J.S.A.* 12A:9-301(1)(b).

In order to perfect a security interest a financing statement must be filed, unless the particular security interest falls under one of the exceptions listed in *N.J.S.A.* 12A:9 302(1). For United Pacific to perfect its alleged security interest the filing of such a financing statement, executed in accordance with law, was required.

United Pacific did file a UCC-1 financing statement, but it is deficient for lack of the debtor's signature; it therefore did not perfect a security interest even if United did have a valid security agreement, because it does not comply with *N.J.S.A.* 12A:9–402(1) which states:

A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

The financing statement that was filed naming United Pacific as the secured party was not signed by Maple, the debtor. United Pacific (inadvertently or because it was unaware of a security agreement between itself and Maple) attached to the financing statement the alleged security agreement with Reliance which was signed by the debtor. However, such action is no substitute for the required signature of the debtor because United Pacific and Reliance are separate corporate entities.

Even though United Pacific is a wholly-owned subsidiary of Reliance, they are still different legal entities. A stockholder and the corporation are two separate and distinct entities. *Boyle v. U. S.*, 355 *F.*2d 233 (3 Cir. 1965), app. after remand 380

*F.2d* 973 (3 Cir. 1965); *Bound Brook Water Co. v. Jaffe*, 284 *F.Supp.* 702 (D.N.J.1968). This basic principle applies in the situation where one corporation owns another corporation. *Magyar v. American Tel. & Tel. Co.*, 88 *N.J.Super.* 18 (Law Div.1965).

Judge Edward S. Miller recently stated in *Mingin v. Continental Can Co.*, 171 *N.J.Super.* 148 (1979 Law Div.):

> \* \* \* the corporate form may not be disregarded except in the case of actual fraud. *Frank v. Frank's, Inc.*, 9 *N.J.* 218 (1952), *Yacker v. Weiner*, 109 *N.J.Super.* 351, 356 (Ch.Div.1970), aff'd 114 *N.J.Super.* 526 (App.Div.1971). The court may not bastardize by construction that which the Legislature has legitimized by statute.

The agreement filed is not a security agreement between United Pacific and Maple. It is only between Reliance and Maple and one for which no value was given.

United Pacific contends that the financing statement as filed substantially complies with the requirements of the Uniform Commercial Code, *N.J.S.A.* 12A:9 402(5). The court, however, feels that the issue is more properly whether the lack of a signature of the debtor on either the financing statement or a valid security agreement attached thereto is fatal to the creation of a valid lien by a creditor.

The filing of a financing statement is prerequisite to the perfection of a valid security interest. *N.J.S.A.* 12A:9 302. A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. *N.J.S.A.* 12A:9 303(1). A security interest attaches when there is an agreement that it attach, value is given and the debtor has rights in the collateral. *N.J.S.A.* 12A:9 204.

Filing is effectuated by presentation for filing of a financing statement, tender of the filing fee in acceptance of the statement by the filing officer. *N.J.S.A.* 12A:9 403. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. *N.J.S.A.* 12A:9 402(1).

The Uniform Commercial Code should be liberally construed and applied to promote its underlying purposes and policies. *Bramble Transportation, Inc. v. Sam Senter Sales, Inc.*, 294 A.2d 97, 103 (Del.Super.1971). The primary purpose of a financing statement is to put a searcher on notice that an underlying security agreement may be outstanding. So far as notice is concerned, a properly filed financing statement would thus serve its intended purpose if a subsequent party would have been put on notice of an outstanding security agreement. *Bramble, supra* at 103. The intention of § 9 402 of the Uniform Commercial Code is that the inquiring party be under a duty, and be able by virtue of the financing statement, to make sufficient further inquiries to determine the nature of the collateral relationship. See New Jersey Study Comment and Uniform Commercial Code Comment to *N.J.S.A.* 12A:9 402; *Bank of North America v. Bank of Nutley*, 94 *N.J.Super.* 220 (Law Div.1967) (which held that the misstating of a debtor's name did not constitute substantial compliance).

In determining this matter, however, the court feels that the above-cited policy concerning the theory of "notice filing" is subordinate to or must be construed with the mandatory requirement that the debtor must sign the financing statement. Otherwise, any financing statement, however prepared, would constitute notice and give priority regardless of its intrinsic validity.

As indicated earlier, the real issue is whether a financing statement *must* be signed by the debtor. The case of *Provident Finance Co. v. Beneficial Finance Co.*, 36 *N.C.App.* 401, 245 *S.E.* 2d 510 (Ct.App.1978), is the closest case to the present one. The court there held that the Uniform Commercial Code does have a liberal definition for "signed," but that in cases dealing with the *debtor's* signature on financing statements the court should apply this liberal definition with caution. The court indicated that other courts have applied this provision somewhat liberally when dealing with a creditor's signature. *Benedict v. Lebowitz*,

346 *F*.2d 120 (2 Cir. 1965); *In re Hargrove*, 2 *U.C.C.Repr.* 40 (D.Conn.1964). The North Carolina Court of Appeals indicated, however, that the absence of the *debtor's* signature is a different matter. In such case they cited a quotation from one of the authorities on the Uniform Commercial Code:

> We have found no case construing the official version of 9 402 in which a court found a financing statement to be effective despite the absence of the signature of a debtor. If the debtor's signature is omitted the financing statement is ineffective . . . *White and Summers, Uniform Commercial Code* (1972) at 835.

In the *Provident Finance Co.* case, *supra,* the court held that a security agreement was not properly perfected as to the husband because the financing statement, listing one Norman Carlyle as the debtor, had been signed by his wife only. This, the court said, did not constitute compliance with § 9 402(1) of the Uniform Commercial Code, absent some indication on the face of the financing statement that the signer was the agent of the debtor. This case is demonstrative of the difference in the degree of scrutiny, from the liberal attitude accorded the question of notice to the stricter view when evaluating compliance with the requirement of a debtor's signature on the document. All other documents which are of legal and economic consequence require that element of authorization, the personal authentication which formalizes assent to the legal consequences. It is a question separate and apart from the issue of "notice" and thus one which should not be disposed of based on a doctrine grounded peculiarly on the issue of notice. Clearly, the requirement by the Legislature of the debtor's signature does not further any "notice" objective. Its necessity is, rather, grounded in the purpose of evidencing assent and preventing fraud. Regardless of whether there was any understanding between the parties regarding this financing statement, it was not formalized by a signature of the party to be held.

There is no evidence that the debtor (Maple) ever knew that a UCC–1 financing statement was filed. The reason why United Pacific did not file its 1973 continuing agreement of indemnity as a financing statement is of no consequence since, in fact, it failed to do so.

There is no evidence before the court that United Pacific knew when it filed the financing statement that it had a valid security interest. This is demonstrated by its failure to attach its agreement of indemnity to the financing statement, and the certification of one of its attorneys, dated November 14, 1979, which made reference only to a purported security agreement between Maple and Reliance. A waiver of the mandatory requirement of the debtor's signature on either the financing statement or a security agreement attached thereto cannot depend on if, when, and where a valid signature of the debtor was executed. The signature of the debtor is the most important, if not the only, method of authentication. To permit parol evidence of the existence of a signature on another document at any time after the filing of a financing statement could open the door to fraud (which is not involved herein), the prevention of which is one of the very purposes for requiring the debtor's signature on the filed financing statement. The fact that the unfiled security agreement contains all the proper information and signature of the debtor which should have been attached to the financing statement does not cure the defect of the lack of the debtor's signature in the financing statement. United Pacific attempts to find comfort in certain cases, such as *Leasing Service Corp. v. American Nat'l Bank & Trust Co.*, 19 *U.C.C. Reptr.* 252 (D.N.J.1976), where it was held that a lease agreement, duly signed, was adequate to meet the notice prescription inherent in the Code as adopted in New Jersey. It is distinguishable from the instant action insofar as it concerned documents duly authenticated through the debtor's signature, and was concerned with the notice aspect to be afforded to an unusual form of agreement. Instead, this case goes only to the

proper authentication of the document, not whether the filing warns of its presence.

United Pacific also relies upon a formal opinion by the Attorney General of Alabama, in which it was indicated that a financing statement lacking the signature of the debtor, but filed simultaneously with a security agreement containing that signature, should be accepted for *filing* as meeting the mandate of § 9–402 of the Code. 4 *U.C.C.Reptr.* at 126 129. However, in such a case there would be a signature on a valid security agreement filed simultaneously with the financing statement. Furthermore, the opinion was an advisory one, merely as to the requirements of acceptance for filing a financing statement, and not addressed to the validity of a lien.

The court finds that there has not been compliance with the mandatory requirement of a signature of the debtor on the financing statement or on any valid document between the parties attached thereto. Therefore, United Pacific never obtained a valid lien on any of the personal property of Maple.

The court will confirm the sale of all personal property which has been duly advertised.