# Industrial Packaging Products Co. *v.* Fort Pitt Packaging International, Inc. (et al., Appellant).

Argued March 15, 1960.   Before Jones, C. J., Mus-MANNO, Jones, Cohen, Bok and Eagen, JJ.

*Harry R. Levy,* for receiver, appellant.

*Gilbert M. Gerber,* with him *Nathan H. Leventon* and *Charles H. Harris,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 23, 1960:

The Provident Trust Company of Pittsburgh, pursuant to Sec. 9-403 of the Uniform Commercial Code (Act of April 6, 1953, P. L. 3, §9-403, 12A PS §9-403), filed the following financing statement in the office of the Prothonotary of Allegheny County on August 18, 1955:

"15110 of 1955

*Financing Statement*

"This financing statement is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

1. Debtor (or assignor)—Fort Pitt Packaging Co., Inc., 5615 Butler Street, Pittsburgh 1, Pa.
2. Secured Party (or assignee)—Provident Trust Co., 900 East Ohio St., Pittsburgh 1, Pa.
3. Maturity date of obligation —————————.
4. The financing statement covers the following types of property: All present and future accounts receivable submitted.

Fort Pitt Packaging Co., Inc.
Leo A. Levy, Treas.

Provident Trust Company
A. W. Charlton
Executive Vice. Pres."

Under Sec. 9-403 of the Code such a statement remains effective for a period of five years. On August 19, 1955, Provident Trust Company filed a similar statement in the office of the Secretary of the Commonwealth in Harrisburg.

On February 4, 1957, Fort Pitt Packaging International, Inc.[1] entered into a written contract with the United States Government for the maintenance, repair and overhaul of vehicles. On March 26, 1957, Fort Pitt entered into a contract[2] with Empire Commercial Corporation wherein Empire agreed to lend Fort Pitt $140,000, and Fort Pitt agreed to assign to the Provident Trust Company as Empire's agent its contract with the United States Government and any and all payments due or to become due thereunder. On the same day, March 26, Fort Pitt sold and assigned to the Provident Trust Company, the payments due or which may become due under the governmental contract. Notice of the assignment was given to the Contracting Officer of the Department of the Army, pursuant to the provisions of the Federal Assignment of Claims Act of 1940, as amended, 31 U.S.C.A. 203.

One year later, on March 27, 1958, Fort Pitt was placed in receivership and on May 27, 1958, upon petition of creditors, Robert Mellin, Esquire, was appointed receiver. On June 10, 1958, the said receiver petitioned the Court of Common Pleas of Allegheny County for a rule upon Empire to show cause why the assignments of the proceeds for Fort Pitt's services performed under the government contracts should not be declared null, void and ineffective as against the re-

---

[1] Formerly known as Fort Pitt Packaging Co., Inc.

[2] There were actually two contracts executed on that day between Fort Pitt and Empire. However, since the only variation between the two contracts is in the amounts involved, being $60,000 and $80,000 respectively, for purposes of clarity the two contracts are referred to as a single contract.

ceiver. After hearing held and argument, the court below dismissed the receiver's petition. From that order this appeal was taken.

Empire contends that the laws of New York should govern because under paragraph 16 of Fort Pitt's letter to Empire dated March 26, 1957,—the contract between them—, it is provided "that [the] agreement and performance thereof shall in all respects be governed by and in accordance with the laws of the state of New York." Empire cites Sec. 1-105(6) of the Uniform Commercial Code which provides "whenever, a contract, instrument, document, security or transaction bears a reasonable relationship to one or more states or nations in addition to this state the parties may agree that the law of any such other state or nation shall govern their rights and duties. In the absence of an agreement which meets the requirements of this subsection, this act governs." However, the Uniform Commercial Code also provides, in Sec. 9-103, "if the office where the assignor . . . keeps his records . . . is in this state, the validity and perfection of a security interest . . . is governed by this article." We agree with the court below that "as between the parties it is lawful for them to agree as to what law shall apply; but where, as here, we are dealing with the rights of creditors in the property of one of the contracting parties, then the law of the State of such party's domicile or place of business shall apply. Otherwise, it would be possible for two parties to render nugatory as to third parties an Act of Assembly passed for the benefit of such third parties." The laws of Pennsylvania, not New York, governs this controversy.

Appellant Mellin contends that the filing of the financing statement in 1955 was not sufficient to secure the amounts due under Fort Pitt's contract with the United States Government which was executed in

1957. The filing of the financing statement pursuant to Sec. 9-403 was entirely proper. The Uniform Commercial Code does not require that the secured party as listed in such statement be a principal creditor and not an agent. In this case, apparently, the Provident Trust Company filed the financing statement as a principal creditor, but in 1957, it became the collecting agent for the Empire Commercial Corporation. Neither the Provident Trust Company nor Empire had any reason to believe that it would be necessary to file a second financing statement which would in all respects duplicate the 1955 statement with the exception that the Provident Trust Company would be listed as an agent for Empire. The purpose of filing this financing statement is to give notice to potential future creditors of the debtor or purchasers of the collateral. It makes no difference as far as such notice is concerned whether the secured party listed in the filing statement is a principal or an agent, and no provision in the Uniform Commercial Code draws such a distinction.

The financing statement covered "all present and future accounts receivable submitted." Section 9-110 of the Uniform Commercial Code provides that "for the purposes of this article any description is sufficient whether or not it is specific if it reasonably identifies the thing described." There is no doubt that the description in the financing statement reasonably identifies the collateral security. It is difficult under the circumstances to imagine how the description could be more complete without filing new and amended descriptions each time a new account receivable falls within the purview of the financing statement. Nowhere in the Uniform Commercial Code is such a requirement set forth.

Section 9-204(3) provides that "except as provided in subsection (4) [which deals with crops and con-

sumer goods] *a security agreement may provide that collateral, whenever acquired, shall secure any* advances made or other *value given at any time* pursuant to the security agreement." (Emphasis added.)

In the 1957 agreement between Fort Pitt and Empire, Fort Pitt agreed to assign to Provident Trust Company all payments to be received as they became due from the United States Government under Fort Pitt's contract of February 4, 1957 with the Government. These amounts due fell within the clause "future accounts receivable submitted" contained in the 1955 financing statement filed by Provident Trust Company. Comment 2 to Sec. 9-303 of the Code states that the "secured party is entitled to have his security interest recognized in insolvency proceedings instituted against the debtor." Therefore, the interest of the secured party, Provident Trust Company is superior to that of the receiver in bankruptcy and any funds which have been placed in the hands of Provident Trust Company pursuant to the assignment by Fort Pitt need not be turned over to the receiver. These funds are properly being held by the Provident Trust Company for the benefit of its principal, Empire Commercial Corporation.

Order affirmed.