WALDEN, Chief Judge.
These appeals are consolidated for appellate purposes because they involve the same point of law and arise out of the same trial court case.
The appellants, Robert M. Zirot, d/b/a General Spray Service and George A. Hormel & Company, were among the defendants. The trial court denied their Petitions for Orders Requiring Receiver to Pay Their Claims. They appeal. We affirm.
The action in the trial court was, in the main, one to foreclose a mortgage on a *681 certain 660 room motel complex. During the course of events a receiver was appointed and authorized to take possession and operate the motel. The appointment was on September 30, 1974.
Appellant, Hormel, furnished meat supplies to the motel. Appellant, Zirot, furnished certain services to the motel. In both instances the supplies and services were furnished prior to the appointment of the receiver.
The appellate point may be stated:
Whether appellants’ claims for services and supplies furnished within a two month period immediately prior to the appointment of a receiver for the motel constituted an operating expense of the receivership which should have been paid by the receiver?
Succinctly, were the claims operating expenses of the receivership? If so, they should be paid. If not, they should be rejected.
The appellants contend that they should be paid for the supplies furnished prior to the appointment of the receiver because these supplies were expenses of operating the receivership and the expenses of operating the receivership constitute a first charge upon the earnings. Appellants argue that the six month’s rule is applicable. This rule is that claims which accrued in the period six months before the beginning of the receivership are entitled to be paid out of the income collected during receivership.
Appellants’ contention is without merit for two reasons. The first is that the cases enunciating the six month rule of prefera-bility have been limited to receiverships of public or quasi-public corporations — railroads, public utilities and the like. Second, Article 9, § 301 of the UCC, Fla.Stat. § 679.-301(3), is dispositive of the issue.
Regarding the six month rule, it has been noted that “[u]nder certain circumstances in railroad receiverships an expense of operation such as a debt incurred for labor, supplies, equipment or improvements, before receivership is entitled to priority over mortgagees.” Clark, Law of Receivers 3d Ed. 1959, § 676. The seminal case in this area is Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339 (1879). The facts in Fosdick were: a certain railroad executed a mortgage to Fosdick. The railroad also entered into an agreement with Schall concerning the rental of railroad cars. Fosdick subsequently sued to foreclose his mortgage and petitioned for the appointment of a receiver. During the receivership the rental railroad cars were used. The trial court allowed Schall to intervene and ordered the receiver to pay Schall for the rental of the cars for the period of the receivership and six months prior thereto. One question on appeal to the U.S. Supreme Court was whether the order for the payment out of the fund in court for the rental of the cars, during the time they were used by the receivers appointed by the state court and for six months before was proper. The court did not allow it in this case, apparently because Schall recovered his railroad cars anyway; Burnham v. Bowen, 111 U.S. 776, 4 S.Ct. 675, 28 L.Ed. 596 (1884) (This also involved a railroad foreclosure. The court allowed payment by the receiver out of the current income for coal delivered prior to the appointment of the receiver. The rationale was that the payment of coal was for current expenses. The court cited Fos-dick for the proposition that the income from which the mortgagee is to be paid is net income which is gross income, minus operating and managing expenses.); Virginia and A. Coal Co. v. Central Railroad & Banking Co. of Georgia, 170 U.S. 355, 18 S.Ct. 657, 42 L.Ed. 1068 (1898) (Distributors of coal petitioned receiver of railroad for payment for coal delivered prior to receivership. The court held it should be paid as it was a current operating expense.)
However, early decisions also start to limit the above doctrine. The court in Kneeland v. American Loan & Trust Co., 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890) held that in a foreclosure action for a railroad in which a receiver was appointed it was error to pay the rental on rolling stock, thereby subordinating the priority of the mortgage debts. It must be noted, how *682 ever, that the owner of the rolling stock recovered it. The court then stated:
“ • • • [W]e remark, first, that the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because, in a few specified and limited cases, this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims.”
accord Farmers’ Loan & Trust Co. v. Grape Creek Coal Co., 50 F. 481, (S.D.Ill.1892). (“It is only against railroad mortgages that the supreme court of the United States has sustained orders giving priority to receiver’s certificates representing particular indebtedness, and, as already stated, then only on principles having no application to a mortgage executed by a private corporation owing no duty to the public. . . . [T]here is a plain implication that the limited power which courts may exercise in displacing the liens of railroad mortgages should not and cannot be extended to mortgages executed by private corporations.”); Knickerbocker Trust Company v. Green Bay Phosphate Company, 62 Fla. 519, 56 So. 699 (1911); National Surety Corp. v. Sharpe, 236 N.C. 35, 72 S.E.2d 109 (1952) (citing Knickerbocker, supra, the court held that indebtedness in operating private firm in receivership can not be given priority over claims of non-consenting lienholders.); Crane Co. v. Fidelity Trust Co., 238 F. 693 (9th Cir. 1916); Clark, supra, § 677; 66 Am.Jur.2d, Receivers § 306 et seq.
It is our opinion that the six month preference rule is inapplicable to appellants and that their argument in its support is without merit.
Finally, appellants’ claims were correctly denied under the clear provisions of Fla.Stat. 679.301(l)(b), (3) (1975):
“679.301 Persons who take priority over unperfected security interests; ‘Lien creditor.’
“(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of: ******
“(b) A person who becomes a lien creditor without knowledge of the security interest and before it is perfected;
* * * * * *
“(3) A ‘lien creditor’ means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment. Unless all the creditors represented had knowledge of the security interest such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest.”
As seen, this statute establishes that a receiver takes priority over those with an unperfected security interest. We will not plumb or second-guess what appellants might have done at the time of delivery in order to perfect a lien or obtain some type of security device or to otherwise protect themselves. Suffice to say, they simply delivered on credit and they are nothing more nor less than unsecured creditors.
While we are not certain as to the differences, if any, as between an unsecured creditor as opposed to a creditor with an unper-fected security interest, we are certain and hold that an unsecured creditor has no greater rights or priority when compared to a creditor with an unperfected security interest. If anything, the unsecured creditor stands at the bottom of the creditor totem pole. Hence, we believe that Fla.Stat. 679.-301 (1975), in its application, establishes the priority of the receiver over an unsecured creditor.
And so, in light of the time sequences, the receiver became a lien creditor with priority over the appellant’s claims. Anderson, Uniform Commercial Code, 2d Ed., 1971, § 9-301:10; Industrial Packaging Products Co. *683 v. Fort Pitt Packaging International Inc., 399 Pa. 643, 161 A.2d 19 (1960). (Receiver was appointed after the creditor had filed a financing statement. Hence, the court held the receiver did not have priority.); E. Turgeon Construction Co., Inc. v. Elhatton Plumbing & Heating Co., Inc., 110 R.I. 303, 292 A.2d 230 (1972) (Court cited UCC to defeat receiver’s claim to money over that of a creditor.)
Having considered the issue, the Orders appealed are
AFFIRMED.
DOWNEY, J., and LEE, THOMAS E., Associate Judge, concur.