MATERIAL SERVICE CORPORATION, Plaintiff-Appellee, *v.* ED BOGDAJEWICZ *et al.*, Defendants.—(SAFECO INSURANCE COMPANY OF AMERICA *et al.*, Citation Defendants-Appellants.)

First District (2nd Division)   No. 77-1478

Opinion filed March 27, 1979.

Gilmartin, Wisner & Hallenbeck, Ltd., of Chicago (Charles A. Gilmartin, of counsel), for appellant Continental Casualty Company.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Douglas M. Reimer and Stanley J. Davidson, of counsel), for appellant Safeco Insurance Company of America.

Howard M. Turner, of Gould & Ratner, of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Safeco Insurance Company of America (hereinafter referred to as Safeco) and Continental Casualty Company (hereinafter referred to as Continental) issued performance bonds to Egyptian Construction Company, Inc. (hereinafter referred to as Egyptian) to insure performance of certain construction projects undertaken by Egyptian. Egyptian experienced difficulty in completing the projects and Safeco and Continental agreed to advance funds to Egyptian so that the projects could be completed in an orderly fashion.

On March 7, 1975, Egyptian, Safeco and Continental[1] entered into a written agreement containing the terms upon which Safeco and Continental would advance funds for the construction projects. This agreement provides, in relevant part:

"11. The Principals hereby agree to assign all of their right, title and interest in and to the beneficial interest in certain land trusts held by the Sears Bank as additional security to the Surety, said land trusts and the properties therein being described in Exhibit A attached hereto and made a part hereof as though fully set forth herein."

Pursuant to paragraph 11 the security given by Egyptian to Safeco and Continental was comprised of assignments of beneficial interests in land trusts. It is important to note at this point that "Exhibit A" was never attached to the agreement. In fact, it is admitted by the litigants that "Exhibit A" does not exist. Consequently, the agreement purports to incorporate by reference a document which is nonexistent. The assignments and acceptances thereof have been made part of the record on appeal.

On August 1, 1975, a judgment by confession was entered in favor of Material Service Corporation (hereinafter referred to as Material) against Ed Bogdajewicz, president of Egyptian, and Egyptian in the amount of $27,240.96. In order to recover the amount of the judgment, Material commenced citation proceedings in March 1976 to discover the assets of Bogdajewicz and Egyptian. During the pendency of the citation

---

[1] We note that the briefs refer to Safeco and Continental as the sources from which money was advanced to Egyptian. Page 6 of the agreement is not, however, signed by any officer of Continental.

proceedings Material discovered that Egyptian had been the owner of the beneficial interests in the aforementioned land trusts and had assigned those interests to Safeco and Continental. Consequently, Sears Bank and Trust Co., Safeco and Continental became respondents in the citation proceedings.

The citation proceedings continued through December 1976. On January 7, 1977, a hearing was held on the citation proceedings in the circuit court of Cook County. At the conclusion of the hearing the court found that a security interest in favor of Safeco and Continental had not attached due to an insufficient description of the collateral. An order was entered requiring the delivery of the beneficial interests in the land trusts to the sheriff of Cook County for sale in order to satisfy ·Material's judgment lien.

On February 4, 1977, Safeco and Continental filed a motion to vacate the January 7, 1977, order and a memorandum in support thereof. The motion and memorandum asserted: (1) that Safeco and Continental had a valid security interest in the land trusts; and (2) that the security interest should take priority over Material's judgment lien. On April 15, 1977, Material filed a reply. On May 31, 1977, the circuit court denied the motion to vacate the January 7, 1977, order.

Safeco and Continental presently appeal from the judgment entered on January 7, 1977, and from the May 31, 1977, order which denied the motion to vacate. The sole issue presented for review is whether a valid security interest was created in favor of Safeco and Continental by virtue of the March 7, 1975, agreement. This broad issue may be reduced to two issues of narrower scope:

> 1. Whether the agreement merely evidenced an agreement to perform at some future date;
> 2. Whether paragraph 11 of the agreement adequately described collateral so as to conform with section 9—203(1)(a) of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—203(1)(a)) ("Attachment and Enforceability of Security Interest—Proceeds—Requisites").

The resolution of these two issues is fundamental to the finding of an enforceable security interest against the debtor or third parties. Section 9—203(1) (Ill. Rev. Stat. 1977, ch. 26, par. 9—203(1)) specifies the requisites for an enforceable security interest. Section 9—203 provides, in relevant part:

> "§9—203. Attachment and Enforceability of Security Interest—Proceeds—Requisites.
>
> (1) Subject to the provisions of Section 4—208 on the security interest of a collecting bank and Section 9—113 on a security

interest arising under the Article on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

> (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and
>
> (b) value has been given; and
>
> (c) the debtor has rights in the collateral."

Material contends that the March 7, 1975, agreement is not a security agreement but merely an agreement to perform at some future date. Material asserts that an agreement to assign collateral as security does not create a security interest because no collateral has actually been assigned.

■■ Material has incorrectly characterized the agreement as a document to have force and effect at some date subsequent to March 7, 1975. Paragraph 11 of the agreement refers to assignments of beneficial interests in land trusts. During the aforementioned citation proceedings Material became aware of the assignments made by Egyptian through Edward Bogdajewicz and accepted by Safeco and Continental. The assignments and acceptances were also dated March 7, 1975. Consequently, we have no doubt that Egyptian, Safeco and Continental intended the agreement to have immediate effect. See Ill. Rev. Stat. 1977, ch. 26, par. 9—102(1)(a) ("Except as otherwise provided in Section 9—104 on excluded transactions, this Article applies (a) to any transaction (regardless of its form) which is intended to create a security interest * * *").

Material also contends that paragraph 11 of the agreement inadequately described the collateral referrred to in the agreement. Paragraph 11 indicated that the collateral would be assignments of beneficial interests in land trusts held by the Sears Bank and Trust Company. We again note that no document further describing the collateral with trust numbers was, at any time, appended to the agreement.

The description of collateral in security agreements and financing statements has been the subject of debate and comment. (See White & Summers, Handbook of the Law under the Uniform Commercial Code §23—3, at 787-89 (1972); Note, *Problems as to the Degree of Specificity of Descriptions Under the Uniform Commercial Code*, 22 N.Y.L.S.L. Rev. 679 (1977); Note, *Description Of Collateral In A Financing Statement: Should It Be Required?*, 4 Val. U.L. Rev. 205 (1970); Fein & Seils, *Loans to be Secured by an Assignment of the Beneficial Interest in a Land Trust*,

55 Chi. Bar Rec. 164, 168 (1974).) The sufficiency of the description has also been, to some extent, the subject of legislation in Illinois. Section 9—110 of the Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—110) provides:

"§9—110. Sufficiency of Description.

For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

This Uniform Commercial Code definition of "description" as a reasonable identification of what is described is capable of embellishment. Professors White and Summers submit that the written agreement must contain at least a general description which an objective observer would find to include the collateral in question. Another approach to the problem of description considers the purpose of the description in the security agreement. (Note, *Problems as to the Degree of Specificity of Descriptions Under the Uniform Commercial Code*, 22 N.Y.L.S.L. Rev. 679 (1977).) A description may: (1) evidence the agreement between the parties; (2) express the intention of the parties; or (3) only alert parties as to the property subject to repossession. Pursuant to this approach the degree of requisite specificity in the description is necessarily dependent upon the purpose selected and the objective sought. 22 N.Y.L.S.L. Rev. 679, 687-88.

The Illinois Code Comment to section 9—110 (Ill. Ann. Stat. ch. 26, par. 9—110 (Smith-Hurd 1974)) discusses the purpose of the description in the security agreement. The Comment states, in relevant part:

"The primary purposes of a description of real or personal property under Article 9 are to provide enough specificity to permit accurate filing of the financing statement by the filing officer and thereby to give notice to others that the secured party has an interest in the property described. The test is whether the description 'reasonably identifies what is described,' which it will do if it describes the property so as to distinguish it from any other property with which it might be confused. See Official Comment to this section, and cf. Official Comments 2 and 5 to §9—402. If a description performs that job, it is sufficient even though it may contain errors. See §9—402(8), and cf. Still Associates v. Murphy, 358 Mass. 760, 267 N.E.2d 217 (1971).

It is important to bear in mind, however, that a general description adequate in a financing statement (§9—402) may not be sufficient in the underlying security agreement (§9—203(1)(a)). The former is solely to give notice; the latter creates substantive rights in collateral. The practitioner should also bear in mind that a difference in descriptions as between the security agreement and the financing statement can lead to serious problems, if the

difference involves omission of items of collateral from either document. The security agreement and the financing statement are double screens through which the secured party's rights to collateral are viewed, and his rights are measured by the narrower of the two. See, e.g., American Car Co. v. H. M. H. Co., 97 R.I. 59, 196 A.2d 150 (1963); Mitchell v. Shepherd Mall State Bank, 458 F.2d 700 (10th Cir. 1972)."

■■ It is clear that in the case at bar, the purpose of the description of the collateral is not the notification of others. This is true since no document (including a financing statement) need be filed to perfect a security interest created by an assignment of a beneficial interest in a trust or a decedent's estate. (Ill. Rev. Stat. 1977, ch. 26, par. 9—302(1)(c).) The Illinois Code Comment to section 9—302(1)(c) (Ill. Ann. Stat. ch. 26, par. 9—302(1)(c) (Smith-Hurd 1974)) reads, in relevant part, as follows:

"This paragraph changes the rule followed in Levine v. Pascal, 94 Ill. App. 2d 43, 236 N.E.2d 425 (1st Dist.), petition for leave to appeal denied 39 Ill. 2d 626 (1968), decided under the pre-1972 text, in which a beneficial interest in an Illinois land trust was held to be a general intangible which could be perfected only by filing. Filing is no longer necessary to perfect a security interest in a beneficial interest in a trust or a decedent's estate."

The Comment to section 9—110 (Ill. Ann. Stat. ch. 26, par. 9—110 (Smith-Hurd 1974)) is replete with examples of sufficient and insufficient descriptions of collateral. "All present and future accounts receivable submitted" (*Industrial Packaging Products Co. v. Fort Pitt Packaging International, Inc.* (1960), 399 Pa. 643, 161 A.2d 19), "accounts receivable" (*In re Varney Wood Products, Inc.* (4th Cir. 1972), 458 F.2d 435), "inventory and accounts receivable" (*In re Platt* (E.D. Pa. 1966), 257 F. Supp. 478) and "all contents of luncheonette including equipment such as: * * *" (*National Cash Register Co. v. Firestone & Co.* (1963), 346 Mass. 255, 191 N.E.2d 471) have been held sufficient descriptions of collateral. "All personal property" (*In re Fuqua* (10th Cir. 1972), 461 F.2d 1186) and "consumer goods" (*In re Lehner* (D. Colo. 1969), 303 F. Supp. 317, *aff'd* (10th Cir. 1970), 427 F.2d 357) have been held insufficient descriptions. It is clear, however, that the aforementioned cases do not concern the type of collateral at issue in the case at bar.

■■ We believe that the description of the collateral contained in paragraph 11 of the agreement was insufficient to reasonably identify what was described. Paragraph 11 identified the nature of the collateral as assignments of beneficial interests in land trusts and specified the bank holding the land trusts. However, paragraph 11 merely referred to "certain land trusts" without stating the quantity of land trusts involved. Furthermore, paragraph 11 was devoid of the land trust numbers.

The proper method of describing collateral in cases such as the one at bar has been set forth by Fein and Seils in their article entitled *Loans to be Secured by an Assignment of the Beneficial Interest in a Land Trust*, 55 Chi. Bar Rec. 164 (1973). In this article the authors state:

> "The collateral should be clearly identified in the collateral note (and/or loan agreement, if used). *Eg.* 'Assignment of entire (or ___% of) beneficial interest under a certain Trust Agreement date _____, and known as Trust No. _____, of which _____ Bank (Trust Company), is trustee, and all of the rights, powers and privileges of the beneficiaries (debtors) thereunder.'
>
> In order to 'perfect' a security interest in a general intangible under the UCC a security agreement must be executed. The collateral should be described in the security agreement with the same particularity suggested for the collateral note." (55 Chi. Bar Rec. 164, 168.)

Because the parties to the agreement failed to utilize this technique for collateral description, we are compelled to find that paragraph 11 of the agreement inadequately described the collateral.

Accordingly, the January 7, 1977, judgment of the circuit court of Cook County and the order of May 31, 1977, are affirmed.

Judgment affirmed.

DOWNING and HARTMAN, JJ., concur.