WIGGINTON, Judge.
Pinnacle Construction, Inc. was a developer in Bay County, Florida that included in its projects a residential subdivision *607 known as Town and Country Lake Estates. As a part of that development Pinnacle constructed a sewage collection system consisting of various sewage collection lines, lift stations and pumps, and a sewage treatment plant and filter system. Pinnacle owned the real property being developed, the property upon which the sewerage system was constructed and capital assets constituting properties and equipment necessary to operate the system.
Beginning in June, 1976, and continuing through August 15, 1978, C.I.T. financed various property acquisitions for Pinnacle including this sewage treatment plant and filtering system. To secure those advances, C.I.T. obtained security agreements and a mortgage from Pinnacle. The mortgage included the specific real property upon which the plant was to be located while the lien on the sewage treatment plant and filter system included:
[A] security interest in accounts receivables [sic] owed to the undersigned and arising from monthly sewer fees heretofore or hereafter charged to various homeowners to whom the undersigned furnishes sewer treatment services through the equipment and facilities described in the security agreement and mortgage deed described above.
Pinnacle’s improvement and development of the properties as well as its future financing and sale was contingent upon insuring the mortgage loans by the Federal Housing Administration and upon obtaining a guarantee from the Veterans Administration. To secure acceptance of such financing by these federal agencies, it is necessary to assure them that there will be a continuous and satisfactory operation of the privately owned sewerage system. This assurance is traditionally manifested by the developers’ transfer of the capital assets of the sewerage system to a nominee trustee who upon default of the developer will assume the responsibility for continuing the operation and maintenance of the sewerage system. This financing requirement was effected by a Trust Deed dated November 30, 1976, granting to Bay County Land & Abstract Co., Inc. the real property upon which the plant was situated as well as:
the sewage collection system including all appurtenances such as manholes, pumping stations, etc., and the sewage treatment plant, including effluent line to point of final disposal, heretofore constructed or to be constructed, including all easements incident to the ownership and operation of said sewage system.
This grant to the trustee by Pinnacle was subject to the financing statement to C.I.T. Corporation.
Stockton financed the development of a portion of Town and Country Lake Estates in which the sewerage system was located. Stockton was secured by a first mortgage from Pinnacle on thirty-three lots located in that subdivision, and a second mortgage on twenty-nine of those lots. Pinnacle was unable to pay the indebtedness and after foreclosure proceedings had been filed by Stockton, Pinnacle and Stockton negotiated a settlement wherein Pinnacle conveyed twenty-nine developed residential lots to Stockton. The agreement between those parties provided that:
Pinnacle further covenants and represents that all sewer tap fees relating to said property being conveyed have been paid for in full and that Stockton will be provided full service without further payment.
In consideration of the transfer of title to the twenty-nine lots that included prepayment of the sewerage connection fees for those lots, Stockton paid to Pinnacle $10,000 cash, cancelled Pinnacle’s indebtedness of some $155,000 and dismissed the foreclosure proceeding. The parties’ agreement was consummated by the payment of monies and transfer of title to the several lots by warranty deed dated July 8, 1980, and recorded in the Public Records of Bay County.
During this same period of time wherein Pinnacle had fallen victim to adverse economic factors causing its inability to meet its obligations to Stockton, the sewage treatment plant devolved into a state of disrepair. Pinnacle’s president and chief operating officer, James Barr, sometime af *608 ter settlement with Stockton left the development, the company and the state. The abstract company, as trustee, was not called upon by Pinnacle to assume the responsibilities of maintenance and operation of the sewerage system.
On September 25, 1980, Bay County filed suit against Pinnacle pursuant to Section 367.165, Florida Statutes (1979), for appointment of a receiver to operate and maintain the sewerage system. Ap-pellee/cross appellant, Roger E. Powell, was appointed receiver in that proceeding and continues to serve. On the same day, C.I.T. filed suit against Pinnacle to foreclose its mortgage and security agreement. Those two cases were consolidated. The right of Stockton to obtain connections to the sewerage system for its twenty-nine lots was questioned. Stockton was allowed to intervene in the consolidated proceeding for the limited purpose of determining its rights to tap onto the system according to its complaint for declaratory judgment.
Final judgment was entered in favor of C.I.T. foreclosing assets including Stockton’s alleged rights to certain connections without further payment of fees. The trial court dismissed with prejudice Stockton’s complaint for declaratory relief finding that C.I.T.’s security interest and mortgage had priority over Stockton’s claim, and that Stockton must pay to the receiver a $500 connection fee for each house it wished to tie onto the system. Stockton filed its notice of appeal from both judgments followed by the cross appeal of receiver Powell. The foreclosure sale established by the court was continued due to lack of a purchaser and the receiver continues to operate the system and collect all revenues therefrom.
Growing out of this not uncommon scenario is Stockton’s primary issue of whether it is entitled to have its twenty-nine lots connect onto the sewerage system free of charge because of its prior purchase of those rights from Pinnacle. The receiver objects to such entitlement because, he alleges the Florida Public Service Commission requires that $500 be paid for each connection. C.I.T.’s objection is to the effect that Stockton did not obtain such right from its agreement with Pinnacle, due to an alleged lack of consideration, and because the connection fees are accounts receivable that were already assigned to C.I.T. for security.
The two points upon which Stockton’s claim rests are whether connection fees are included within “accounts receivable” that Pinnacle pledged to C.I.T. and whether Pinnacle retained the ownership of and rights to the connection fees so as to sell them to Stockton. The distinction between the connection and monthly sewer fees is that a connection fee is an aid in construction to offset the costs of installing the system and tapping onto the trunk line by the property owner, while monthly sewer fees are those charged to the various home owners to whom the developer furnishes sewer treatment services.
C.I.T. can prevail only if it is determined that its security agreement expressly includes in Pinnacle’s grant the connection fees or that such fees are within the definition of accounts receivable. On its face, the instrument clearly grants a security interest in accounts receivable owed to Pinnacle arising from monthly sewer fees both present and in the future. Despite C.I.T.’s desires, the language of the lien and attached exhibit do not include connection fees. C.I.T. could have properly protected itself by more artfully drafting its document to include connection fees, but having failed to do so, it cannot now claim such an interest.
We next focus on whether connection fees are accounts receivable. Section 679.-106, Florida Statutes (1975) defines an “account” as any right to payment for goods or services already obtained by the account debtor. It contemplates a transaction that creates a debt owed to the account holder. The consideration Stockton gave for the acquisition of the twenty-nine developed lots with the right to tie them onto the sewerage system was given at the time the transaction was consummated and no debt or account due Stockton was created in *609 connection therewith. Testimony by the representative of the Public Service Commission was to the effect that it is quite common to have advanced payment of connection fees before homes are built so that future service will be assured.
Having found that C.I.T. cannot prevail on its theory, it must be determined whether Pinnacle had conveyed its interest in the connection fees to Bay County Land & Abstract Company by the trust indenture of November 30, 1976. A close review of that trust deed discloses no mention of connection fees. We find no legal basis or justification in the record for the trial judge to interpret the “etc.” reference in the deed to include connection fees.
By the trust indenture, Pinnacle conveyed to the trustee the capital assets relating to the sewerage system. Pinnacle retained the right and responsibility to maintain the sewerage system at all times in good order and repair so that satisfactory service would be supplied to each of the properties in the subdivision. Pinnacle did not include in the grant to the trustee its rights to the connection fees and thus retained them for future income or bargaining.
Pinnacle, having absolute ownership rights to the connection fees and legal title to certain properties in its development, approached Stockton in an attempt to avert the foreclosure action. Stockton negotiated its deal with Pinnacle and along with other quid pro quo agreed to take a deed to twenty-nine lots that included prepaid connection fees relating to those lots, and the payment of $10,000, in lieu of foreclosure. The appellees have not directed us to any PSC requirement that would prohibit such an agreement. These connection rights were bargained for by Stockton, paid for in cash, and received.
Consequently, we disagree with the trial court’s conclusion and reverse with directions that the lower court enter final judgment for Stockton on its complaint for declaratory judgment.
Stockton’s other point on appeal is whether the trial court erred in including in the final judgment of foreclosure assets which were not described in C.I.T.’s mortgage and security agreement and in foreclosing Stockton’s rights therein. Because of our holding that Stockton owns the right to sewerage connections to the twenty-nine lots, these must be excluded from the properties included in the judgment of foreclosure and sale. However, as to the remaining properties described in the final judgment, the trial court did not err, for Stockton has no standing to challenge other than its right to tap onto the sewerage system.
Several contentions are raised in Powell’s cross appeal. He argues that since the receiver was obliged to employ legal counsel in connection with his receivership duties, those charges should constitute a lien against the property when sold at the foreclosure sale. The trial court evaluated the legal services rendered the receiver and awarded an attorney’s fee of $3,000. His order provided that the fees should be paid from income funds available to the receiver but would neither be a lien against the property that was to be sold at the foreclosure sale nor become an obligation to the successful purchaser of the property at the foreclosure sale.
We affirm the trial court’s fee award as reasonable and proper. We agree with the lower court that pursuant to Section 679.301(l)(b), Florida Statutes (1979), a receiver might take priority over an unsecured creditor, but not a secured creditor such as C.I.T. Zirot v. Gilmer, 336 So.2d 680 (Fla. 4th DCA 1976).
Finally, Powell alleges error on the part of the trial court for its failure in not specifically allowing the receiver the right to additional attorney’s fees for services rendered after the date of the final judgment. We see no merit in this claim as the trial judge has specifically provided in his order appointing the receiver that fees of counsel in connection with the receiver’s duties would be paid from operational income. If additional legal services have *610 been rendered the receiver, counsel may seek a grant of attorney’s fees by filing a motion with the proper court.
This cause is reversed in part and remanded to the trial judge for: (1) modification of the Pinal Judgment of Foreclosure consistent with the opinions and conclusions expressed herein; (2) reversal of the Final Judgment as to the Complaint for Declaratory Judgment and entry of Final Judgment for Stockton declaring its entitlement to sewerage connections to the twenty-nine lots in Town and Country Lake Estates under its agreement with Pinnacle without further fees.
THOMPSON, J., and OWEN, WILLIAM C. Jr., Associate Judge, concur.