CHEMICAL BANK; National Westminister Bank USA, Plaintiffs–Appellees,

v.

SECURITY PACIFIC NATIONAL BANK, Defendant–Appellant.

CHEMICAL BANK; National Westminister Bank USA, Plaintiffs–Appellants,

v.

SECURITY PACIFIC NATIONAL BANK, Defendant–Appellee.

Nos. 92–16522, 92–16560.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1994.

Decided April 4, 1994.

---

H. Michael Clyde, Brown & Bain, Phoenix, AZ, for plaintiffs-appellees-appellants.

Kevin Fong, Pillsbury, Madison & Sutro, San Francisco, CA, for defendant-appellant-appellee.

Before: CHOY, SCHROEDER and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

This case depends on the responsibilities of the lead bank acting for several banks in a multi-bank loan. Its outcome is determined by fiduciary law as modified by the credit agreement entered by the banks. Chemical Bank and National Westminister Bank USA (the plaintiffs), both New York corporations, brought suit against Security Pacific, a California corporation. The district court granted summary judgment in favor of the plaintiffs on their cause of action charging gross negligence in breach of Security Pacific's contractual obligations, and it granted summary judgment to Security Pacific on the cause of action charging breach of its fiduciary obligation. We reverse both the summary judgment in favor of Security Pacific and the summary judgment in favor of plaintiffs.

### FACTS

On April 8, 1983 the plaintiffs together with Security Pacific entered into a credit agreement with Osborne Computer Corporation (Osborne) under which the three banks agreed to provide $25 million in credit, of which Security Pacific would provide 60 percent and the plaintiffs 40 percent. The opening paragraph of this agreement specified that Security Pacific would be the agent for the three banks. The agent undertook various particular duties such as establishing the Eurocurrency/Eurodollar rate; receiving the commitment fee; receiving other notices; remitting to the other banks the payments it received, etc. Among other things the obligation of the three banks to make the first loan was "subject to the condition precedent that Agent shall have received in form and substance satisfactory to Agent and its counsel, the following: ... A Security Agreement granting to Agent a security interest in the accounts receivable and inventory of the Company in substantially the form of Exhibit E annexed hereto; executed Uniform Commercial Code financing statements on the aforementioned property; and a return to Agent of Uniform Commercial Code Requests for Information showing no previously filed and presently valid security interests in the aforementioned property other than in favor of agent."

Section 9 of this agreement was entitled "Duties of Agent." Section 9.3 was entitled "Liability of Agent." It provided that neither the agent nor any of its agents should be liable "except for their own gross negligence or willful misconduct. Agent shall not be responsible in any manner to any of the Banks for the effectiveness, enforceability, genuineness, validity or due execution of this Credit Agreement, the Notes or any other agreements or any certificates, requests ... or to be under any obligation to ascertain or inquire as to the performance or observance of any of the terms, provisions, covenants,

conditions, agreements or obligations of this Credit Agreement or other agreements on the part of Company."

Prior to this agreement, in January 1983, Security Pacific alone had advanced $15 million to Osborne and had perfected its security interest by filing a UCC–1 financing statement on January 21, 1983, listing itself as the secured party. Because this earlier financing statement had been filed, the assistant vice president of Security Pacific who handled the transaction in April 1983 decided that it was unnecessary to file a new financing statement listing the three banks with Security Pacific as their agent holding a security interest under the new line of credit. He reached this decision without consulting counsel.

Counsel for the Chemical Bank asked counsel for Security Pacific to sign off on the documentation for the April 8 agreement. Counsel replied that Security Pacific's policy was not to represent the other banks and, instead of what was requested, wrote that "solely as counsel to Security Pacific," he found the documents satisfactory. The documents were then reviewed prior to closing by counsel for the plaintiffs. No one specifically asked whether a new UCC financing statement had been filed.

In September 1983 Osborne filed for bankruptcy. In the proceedings Osborne argued that plaintiffs were unsecured creditors because they had failed to perfect their security interest. The bankruptcy court upheld this contention. Security Pacific was treated as a secured creditor because of its earlier filing and received 100 percent payment on its loan. In accordance with the credit agreement providing for pro rata sharing of satisfaction of the loan, Security Pacific turned over 40 percent of its recovery to the plaintiffs. The plaintiffs, however, believed they deserved to be made whole.

## PROCEEDINGS

On December 27, 1988 the plaintiffs filed their complaint in the present suit alleging that they had been damaged by Security Pacific's gross negligence in failing to file the financing statement. On the plaintiffs' mo-

tion for summary judgment the district court ruled "that the decision not to obtain new financing statements was intentional conduct on the part of Security Pacific and ... there can be no triable issue as to that fact." It added "that the consciousness of Security Pacific's decision not to obtain the new financing statements is sufficiently willful to, under the circumstances, meet the standard of gross negligence under California law." At the same time the court granted summary judgment to Security Pacific on the plaintiffs' cause of action alleging gross negligence in breach of Security Pacific's fiduciary duty. Both sides have appealed.

## ANALYSIS

■ That Security Pacific owed a fiduciary duty to the plaintiffs is established by the credit agreement of April 8, 1983 which unequivocally identifies Security Pacific as the agent bank. The very meaning of being an agent is assuming fiduciary duties to one's principal. *Restatement (Second) of Agency* § 1(1). The holding of this court in *First Citizens Fed. Sav. & Loan Ass'n v. Worthen Bank & Trust Co.*, 919 F.2d 510, 514 (9th Cir.1990), which requires "unequivocal contractual language" to create a fiduciary duty, is not to the contrary. In that case the bank was the principal lender and was identified as "an independent contractor." *Id.* at 512, 514. There was no intention on the part of this court to abandon "the special concern common law courts have traditionally and consistently exhibited to supervise and enforce fiduciary relationships," including the fiduciary relationship when one bank acts as the agent for another bank. *Women's Fed. Sav. & Loan Ass'n v. Nevada Nat'l Bank*, 811 F.2d 1255, 1258 (9th Cir.1987).

■ Impressed with a fiduciary responsibility, Security Pacific failed to carry it out. Beyond question, it breached its duty and its contract. Beyond question it acted negligently. But there is no law against parties to a contract relieving themselves of liability by contract, particularly when they are sophisticated institutions represented by knowledgeable counsel. The credit agreement that all three banks signed went a long ways toward relieving Security Pacific of

what it might otherwise have been expected to do. It was explicitly not required to "be responsible in any manner" for the "enforceability" of the credit agreement. According to the credit agreement, it was liable only for its "own gross negligence or willful misconduct."

In the light of these provisions, it cannot be said as a matter of law that Security Pacific was guilty of either gross negligence or willful misconduct. That it acted intentionally is not the same as performing an act of misconduct wilfully. In April 1983 there was no established law that a filing agreement was not enforceable if it did not identify the principals covered by the agreement. Although there was no California law on point, the highest court of Pennsylvania had decided the precise issue in *Industrial Packaging Products Co. v. Fort Pitt Packaging Int'l, Inc.*, 399 Pa. 643, 161 A.2d 19 (1960), and it held: "It makes no difference as far as such notice is concerned whether the secured party listed in the filing statement is a principal or an agent, and no provision in the Uniform Commercial Code draws such a distinction." 161 A.2d at 21. The same position was taken in *In re Fried Furniture Corp.*, 293 F.Supp. 92, 93 (E.D.N.Y.1968), *aff'd*, 407 F.2d 360 (2d Cir.1969). A comparable view was taken by the court in *In re Cushman Bakery*, 526 F.2d 23, 30 (1st Cir.1975), *cert. denied*, 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976). On the other hand, there was no controlling authority on point in this circuit. A prudent lawyer would have anticipated the possibility that a bankruptcy court would find the existing UCC–1 financial statement insufficient to perfect the plaintiffs' security interest. Security Pacific created a real risk for its principals when it failed to file.

The plaintiffs offered declarations that it was industry practice for the agent bank to file financing statements for the benefit of each participant in a multi-bank loan. None of these declarations, however, went to the precise question of whether it is industry practice for an agent to file a new financing statement when there is already one on file that, in the agent's view, effectively secures the loan. The plaintiffs note that it would have cost only $10 to file the new statement and that the failure to file it engendered losses for them exceeding $1 million. The point is well made but in itself is insufficient to prove either willful misconduct or gross negligence.

■ Normally, in California as elsewhere, the general standard of care is to be determined by the court; the likelihood of injury from the conduct of the particular defendant charged with negligence is to be determined by the jury. *Ballard v. Uribe*, 41 Cal.3d 564, 572–73 n. 6, 224 Cal.Rptr. 664, 715 P.2d 624 (1986); *Restatement (Second) of Torts* §§ 328 B and 328 C; *Prosser and Keeton on Torts* § 37, at 237 (5th ed.1984). The same considerations apply in a determination of gross negligence. What is "gross" in the particular case is a matter of fact that must be left to the determination of the reasonable persons making up the trier of fact.

It is, no doubt, odd that three sophisticated lending institutions would enter into an agreement with themselves that puts the responsibility of their agent in such a doubtful state that lay persons, chosen more or less at random, are to be the ones to determine whether the responsibility was met. But if these banks chose to operate their business in this way, it is not the court's function to provide a judge to determine a question that properly belongs to a trier of fact. Accordingly, we reverse the grant of summary judgment in favor of Security Pacific as well as the summary judgment for the plaintiffs.

**REVERSED and REMANDED.**