2000 ME 24

## In re Boyce L. BEARDSLEY.

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 17, 1999.

Decided Feb. 10, 2000.

Peter C. Ecssenden, Brunswick, for Standing Chapter 13 Trustee.

F. Bruce Sleeper, Jensen, Baird, Gardner & Henry, Portland, for Whirlpool Financial National Bank.

Hugh S. Kirkpatrick, Caribou, for Boyce Beardsley.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] The United States Bankruptcy Court for the District of Maine (Bangor, *Haines, C.J.*) has certified the following question pursuant to M.R. Civ. P. 76B for this Court's determination of Maine law:

> Is the [11 M.R.S.A. § 9–302(1)(d) ] dollar value limitation on the exception to the filing requirements for perfection of purchase money security interests in consumer goods pegged to the "amount financed" for the purchase of each item or is it pegged to the "amount financed" in each transaction in which consumer goods are purchased?

The resolution of this question hinges on the construction to be given to 11 M.R.S.A. § 9–302(1)(d) (Supp.1999),[1] for which there

---

1.  11 M.R.S.A. § 9–302(1)(d) provides:
    *§ 9–302. When filing is required to perfect security interest; security interests to which filing provisions of this Article do not apply*
    *(1) A financing statement must be filed to perfect all security interests except the following:*
    ....
    *(d) A purchase money security interest in consumer goods where the amount financed, as defined in Title 9–A, section 1–301, subsection 5, is less than $2,000 ....*
    *11 M.R.S.A. § 9–302(1)(d) (Supp.1999).*

are "no clear controlling precedents in the decisions of the Supreme Judicial Court." M.R. Civ. P. 76B(a). We conclude that section 9–302(1)(d) automatically perfects purchase money security interests in consumer goods without filing only if the amount of credit extended for purchase of consumer goods in any one transaction is less than $2000.

## I. BACKGROUND

[¶ 2] The facts are taken from the Bankruptcy Court's certification order and stipulations entered into by the parties. On May 1, 1997, Boyce Beardsley purchased on credit in a single invoice transaction a clearing saw, a dump cart, and a mower deck for personal, family, and household use. Beardsley applied for and received credit from Whirlpool Financial National Bank (WFNB) for the combined $2,773.94 purchase price of the three items. The terms of the credit transaction are governed by a cardholder agreement that grants WFNB a purchase money security interest in each piece of equipment purchased by Beardsley.[2] The agreement provides that each of Beardsley's installment payments, to the extent it goes toward principal reduction, is first applied against the balance on the item first purchased or, in the case of several items purchased on the same day, toward the item with the lowest price. As the purchase price of each item is satisfied, the security interest in that item is released. WFNB did not file a UCC–1 financing statement in order to perfect its security interest in Beardsley's equipment.

[¶ 3] On July 17, 1998, Beardsley filed a petition in bankruptcy pursuant to Chapter 13 of the United States Bankruptcy Code. See 11 U.S.C. §§ 1321 & 1322. Pursuant to 11 U.S.C. §§ 544(a) & 551, the

Chapter 13 Trustee has asserted his power to avoid WFNB's security interest because, the Trustee maintains, it is unperfected and, therefore, subordinate to the interest of the Trustee as a hypothetical lien creditor. Beardsley has proffered a Chapter 13 plan that proposes to pay to WFNB less than the full value of the collateral securing his obligation. The Bankruptcy Court cannot approve Beardsley's plan absent a determination that WFNB's security interest in the collateral is unperfected. See 11 U.S.C. §§ 506(a), 1325(a)(5)(B)(ii).

[¶ 4] It is not disputed that WFNB's security interest has attached to each of the goods at issue. Pursuant to 11 M.R.S.A. § 9–203, WFNB's security interests attached to each item at the moment Beardsley bought it, because Beardsley had signed a security agreement describing the collateral, WFNB had "given value," and Beardsley had acquired "rights in the collateral." See 11 M.R.S.A. § 9–203(1). It is also undisputed that WFNB's security interests are purchase money in nature. See 11 M.R.S.A. § 9–107. The question for the Court is whether WFNB's security interests are perfected.

[¶ 5] If section 9–302(1)(d) is read to apply separately to each item purchased in the transaction, then WFNB has a perfected security interest in each item because the cost for each item was well below $2000. If section 9–302(1)(d) is read to apply to the total amount financed in a single transaction involving the purchase of several items, then WFNB's security interest is unperfected because the financing statement is unfiled and the amount financed exceeds $2000.

---

**2.** The security agreement contained in WFNB's credit application provided:

Security Interest: We will retain a security interest, to the extent permitted by law, in all goods charged to your account. If you do not make payments as agreed, the security interest allows us to repossess only the goods which have not been paid for in full.

For purposes of determining whether an item has been paid for in full, any payments you make will be applied ... to the oldest purchase first. If more than one item is charged to your account on the same day, then payments will be applied to the lowest priced item first.

## II. DISCUSSION

[¶ 6] Maine's version of article 9, section 302(1)(d) of the Uniform Commercial Code, is unique. All but three states have enacted the version of section 302(1)(d) recommended by the uniform commissioners, which provides for automatic perfection of purchase money security interests in consumer goods regardless of the cost per item or the amount financed. *See, e.g.,* MASS. GEN. LAWS ANN. ch. 106, § 9–302(1)(d) (West 1999).[3] Kansas and Maryland limit the automatic perfection of purchase money security interests in consumer goods to items with a "purchase price" of $3000 or less. *See* KAN. STAT. ANN. § 84–9–302(1)(d) (1998); MD. CODE ANN., COM. LAW I § 9–302(1)(d) (1997).[4] Only Maine has chosen to limit automatic perfection with language based on the "amount financed." The legislative history does not indicate why this language was adopted.

[¶ 7] Section 9–302(1)(d) provides:

(1) A financing statement must be filed to perfect all security interests except the following:

. . . .

(d) A purchase money security interest in consumer goods where the amount financed, as defined in Title 9–A, section 1–301, subsection 5, is less than $2,000

. . . .

11 M.R.S.A. § 9–302 (1995).

[¶ 8] Thus, section 9–302 looks to the Maine Consumer Credit Code for its definition of "amount financed." Section 1–301(5) of Title 9–A, the Maine Consumer Credit Code, defines "amount financed" as "the amount of credit of which the consumer has actual use [as] computed pursuant to section 2–501 and section 8–206, subsection 1, paragraph B." 9–A M.R.S.A. § 1–301(5) (1997). Section 2–501 of the Consumer Credit Code allows creditors to contract for and receive certain charges in conjunction with the issuance of credit, such as annual fees, insurance costs, and late fees. *See* 9–A M.R.S.A. § 2–501 (1997). Section 8–206(1)(B) provides the method that a creditor must employ to calculate the "amount financed" for purposes of the Consumer Credit Code's truth-in-lending disclosure requirements. *See* 9–A M.R.S.A. § 8–206(1)(B) (1997).[5]

[¶ 9] The Legislature's decision to use the statutory term "amount financed," as defined in the Consumer Credit Code, as the touchstone for automatic perfection in-

---

**3.** MASS. GEN. LAWS ANN. ch. 106, § 9–302(1)(d) provides:

> **9–302. When Filing Is Required to Perfect Security Interest; Security Interests to Which Filing Provisions of This Article Do Not Apply**
>
> (1) A financing statement must be filed to perfect all security interests except the following:
>
> . . . .
>
> (d) a purchase money security interest in consumer goods. . . .

MASS. GEN. LAWS ANN. ch. 106, § 9–302(1)(d) (West 1999).

**4.** The Kansas Commercial Code provides for automatic perfection of a purchase money security interest "in a consumer good with a purchase price of $3,000 or less." KAN. STAT. ANN. § 84–9–302(1)(d) (1998). The Maryland Commercial Code provides automatic perfection for a purchase money security interest "in consumer goods having a purchase price not in excess of $3,000 per item." MD. CODE ANN., COM. LAW I § 9–302(1)(d) (1997).

**5.** 9–A M.R.S.A. § 8–206(1)(B) states:

> B. The "amount financed," using that term, which shall be the amount of credit of which the consumer has actual use. This amount shall be computed as follows, but the computations need not be disclosed and shall not be disclosed with the disclosures conspicuously segregated in accordance with subsection 2:
>
> (i) Take the principal amount of the loan or the cas[h] price less down payment and trade-in;
>
> (ii) Add any charges which are not part of the finance charge or of the principal amount of the loan and which are financed by the consumer, including the cost of any items excluded from the finance charge pursuant to section 8–105; and
>
> (iii) Subtract any charges which are part of the finance charge but which will be paid by the consumer before or at the time of the consummation of the transaction, or have been withheld from the proceeds of the credit;
>
> . . . .

dicates that it is not the purchase price of the goods that determines whether the $2000 threshold has been met, but the amount financed for the purchase, including authorized financing fees and charges relating to the extension of credit. The sole issue before us is whether the term "amount financed" relates to the total amount financed in a given transaction or to the amount financed for the purchase of each consumer item when the creditor has, in a single transaction, extended credit for the purchase of more than one item.

[¶ 10] There is no language in either section 9–302(1)(d) or 1–301(5) suggesting a per item analysis. WFNB asserts in its brief that 9–A M.R.S.A. § 8–206(1)(B) speaks of using the "cas[h] price" as a component of the "amount financed," but this reference is really contrary to WFNB's position. Subsection (1)(B)(i) uses the disjunctive "or" and allows for use of "the principal amount of the loan or the cas[h] price less down payment and trade in" to begin calculation of the "amount financed." *See* 9–A M.R.S.A. § 8–206(1)(B)(i). The reference to "principal amount of the loan" explicitly contemplates a transactional analysis for determination of the "amount financed." Whether "cash price" or the loan principal is used, under 206(1)(B)(ii) and (iii), other charges must then be added or subtracted to determine the "amount financed." Thus section 206(1)(B) makes it evident that "cash price" or "purchase price" is very different from the "amount financed" contemplated by 11 M.R.S.A. § 9–302(1)(d) which relies on the section 8–206(1)(B) calculation for determination of the "amount financed." Moreover, cash price is not the same as

unit price; aggregate purchases also have a cash price.

[¶ 11] Although the debate over economic efficiency and avoidance of secret liens may not be sufficiently momentous to tip the balance one way or the other,[6] we conclude that WFNB's proposed construction is less prudent because it poses a significant risk of confusion and uncertainty about a creditor's filing obligation. For instance, many consumer goods are customarily purchased, at a discounted price, in packaged or bundled form. Thus, a consumer might purchase, for one price, a table and chairs as a dining room set, or a lawn tractor with a mower deck, and snow blower included in a single transaction. Where the individual items comprising the set are also available for sale singly, confusion may arise as to whether a filing is required because individual cash prices may not be stated and the amount financed, to the extent it differs from the sum of the goods' cash prices, may not be easily allocable among the individual items.

[¶ 12] Consider, for example, a transaction that involves the purchase of a lawn tractor with a unit price of $1850 and a mower deck with a unit price of $450 which can be purchased together for a promotional price of $2100. Consider also that the buyer purchases a three-year service contract for $200, and wheel weights for the tractor for $160, financing a total of $2583, sales tax included, in one transaction. If the unit price or per item analysis for determination of the filing threshold is applied to this transaction, whether the lawn tractor passes the threshold is left to considerable speculation and uncertainty.[7] In contrast, focusing on the amount fi-

---

**6.** According to White & Summers, the concern for secret liens in relatively low-priced consumer goods is not that significant because most consumer goods "depreciate fast" and "[c]reditors other than purchase money lenders seldom rely on such goods in making loans." White & Summers, *Uniform Commercial Code*, § 23–7 at 920 (2nd ed.1980). With respect to WFNB's economic efficiency arguments, our resolution not only assures an efficient method of determining the availabili-

ty of automatic perfection, but also leaves the creditor in a position to determine its own fate by exerting control over the number of transactions it requires when it extends credit.

**7.** Applicability of the filing requirement would depend on how one allocated to the "amount financed" the sales tax, the service contract, the wheel weights, and the promotional discount.

nanced for the overall transaction allows for an easy determination of whether the filing threshold is met by simply looking to the financing document. This construction focuses on the unique "amount financed" terminology of the Maine statute, achieves a logical result and avoids the risk of speculative and inconsistent treatment of similar transactions which are appropriate objectives in statutory construction. *See Johnson v. Smith*, 1999 ME 168, ¶ 6, 740 A.2d 579, 581; *Thibeault v. Larson*, 666 A.2d 112, 114 (Me.1995); *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me. 1994).

[¶ 13] Accordingly, our answer to the certified question is that the term "amount financed" in 11 M.R.S.A. § 9–302(1)(d) refers to the total amount financed that appears on the face of the financing contract.

RUDMAN, J., with whom DANA, J., joins dissenting.

[¶ 14] I respectfully dissent, for I cannot conceive that our Legislature would design a system to require the filing of a financing statement for perfection of a security interest that would be avoided simply by the creation of separate security agreements.

[¶ 15] The Uniform Commercial Code provides for the filing of a financing statement as a step in the process of perfecting a security interest. *See* U.C.C. § 9–302; *see id.* § 9–304. The purpose of the filing requirement is to give notice to any third person, *see Industrial Packaging Products Co. v. Fort Pitt Packaging Int'l, Inc.*, 399 Pa. 643, 161 A.2d 19 (1960), including potential future creditors of the debtor and purchasers of the collateral, *id.*, and to protect a creditor by furnishing to others intending to enter into a transaction with the debtor a starting point for investigation which will result in a fair warning with respect to the transaction contemplated. *See Plemens v. Didde–Glaser, Inc.*, 244 Md. 556, 224 A.2d 464 (1966).

[¶ 16] In our version of section 9–302, our Legislature has imposed the burden of the filing of a financing statement in order to perfect a security interest only when the amount financed is $2000 or more. The parties in this case stipulated:

4. On or about May 1, 1997, the Debtor purchased a Ha/Daena clearing saw pursuant to the terms of the Agreement. The amount financed for that item was $661.97. At the same time the Debtor purchased a dump cart pursuant to the terms of the Agreement. The amount financed for that item was also $661.97. In addition, at the same time the Debtor purchase a 66 Rompy mower deck pursuant to the terms of the Agreement. The amount financed for that item was $1,450.00. Each of these three items was purchased at the same time and they were all listed on the same invoice.

Section 9–302 of title 11–A M.R.S.A. requires that a financing statement be filed to perfect all security interests except, *inter alia*, a purchase money security interest in consumer goods when the amount financed is less than $2000. The parties having agreed on the amount financed, I would follow the plain reading of the statute and answer the question posed by holding that a purchase money security interest in consumer goods is perfected without filing when the amount of credit extended for the purchase of each item is less than $2000, irrespective of the number of items purchased in a transaction. To do anything else would add additional transactional costs, which costs are ultimately borne by the consumer.

[¶ 17] The court notes that there is no language in either section 9–302(1)(d) or 1–301(5) of title 9–A suggesting a per item analysis. There is also no language in either section suggesting a transactional analysis. The court further suggests that an item by item analysis "poses a significant risk of confusion and uncertainty about a creditor's filing obligation." Quite the contrary. Under the per item approach no filing is necessary unless an item is sold for $2000 or more. This is a simple rule. Under the court's approach a filing may be necessary for an item worth only $50 if that item is purchased simulta-

neously with other items that collectively cost $2000 or more. Sophisticated creditors may avoid the need to file a financing statement by making two loans instead of one. This, however, will require two monthly invoices and two monthly payments instead of one. The Legislature surely did not intend to drive up transactional costs to no purpose.